Delajandro YOUNG, Appellant,

v.

UNITED STATES, Appellee.

Nos. 90–CF–878, 92–CO–1262.

District of Columbia Court of Appeals.

Argued Jan. 13, 1994.
Decided March 15, 1994.

---

Before ROGERS, Chief Judge, and TERRY and SULLIVAN, Associate Judges.

PER CURIAM:

Appellant, Delajandro Young, appeals his convictions[1] on the grounds that the trial judge erred in denying (1) his motion to exclude a coparticipant's testimony because the plea agreement with the witness was contingent on the government's satisfaction with the witness' testimony, and (2) his motion, pursuant to Super.Ct.Crim.R. 33 and D.C.Code § 23–110 (Repl.1989), for a new trial. We conclude that these contentions are meritless. However, we remand the case to the trial court to vacate appellant's convictions for either felony murder or robbery and second-degree murder.

## I.

Four persons were indicted in connection with the murder by suffocation of Barbara Johnson: appellant, Yvette Pree, Charles Carpenter, and William Wheeler.[2] Pree's trial was severed and Carpenter and Williams testified for the government pursuant to plea agreements.

The government's evidence showed that on October 23, 1988, appellant and his common-law wife, Yvette Pree, went to the decedent's home, tied her up, and took her jewelry, television, some food, and car. Pree testified that appellant taped the decedent's legs, hands, nose and mouth. Carpenter testified that in response to appellant's request, he went to appellant's home, where he saw some of the stolen property and appellant admitted burglarizing the home of a woman whom he had tied up. Wheeler testified that a few days later appellant admitted killing a person. A pawn store employee (Haass) testi-

---

Bernard Jay Williams, appointed by this court, for appellant.

Laura A. Cordero, Asst. U.S. Atty., with whom J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, and John R. Fisher, Thomas C. Black and Ronald Dixon, Asst. U.S. Attys., were on the brief, for appellee.

1. A jury found appellant guilty of robbery, D.C.Code § 22–2901 (Repl.1989), first-degree felony murder/robbery, id. § 22–2401, and second-degree murder, id. § 22–2403. The trial judge imposed consecutive sentences of five to fifteen years for robbery, twenty years to life for first-degree felony murder/robbery, and fifteen years to life for second-degree murder.

2. Appellant and Yvette Pree were indicted for first-degree burglary, D.C.Code § 22–1801(a) (Repl.1989), first-degree felony murder while committing a burglary, id. § 22–2401, robbery, id. § 22–2901, first-degree felony murder while committing a robbery, id. § 22–2401, and unauthorized use of a vehicle, id. § 22–3815. Pree's trial was severed and she was convicted of unauthorized use of a vehicle and second-degree theft. Appellant was also indicted for second-degree burglary of the decedent's home several months before her murder. Young v. United States, No. 91–CF–934, unpublished Memorandum Opinion and Judgment (D.C. Oct. 6, 1992).

fied that appellant had sold the decedent's stolen property at the Buy and Sell store, and appellant had later called in an attempt to persuade her that he had not sold the property.

The defense was that Carpenter had killed the decedent. Appellant testified that out of fear of Carpenter, he had agreed to get Carpenter into the decedent's apartment in payment of a cocaine debt. He also testified that when he and Pree left the decedent's apartment, after Carpenter and Wheeler had burst through the front door, the decedent was still alive. According to appellant, later that night Carpenter showed appellant some of the stolen property and admitted that he had tied the decedent with tape and put cotton in her nose and mouth.

■ Prior to trial, the trial judge denied appellant's motion to exclude Carpenter's testimony. Appellant maintains that the trial judge erred because the plea agreement was "in fact and in the mind of the witness completely contingent upon government satisfaction." Because the agreement permitted the government to void the agreement if the government unilaterally determined that Carpenter's testimony was untruthful, appellant maintains that "the government had such a stranglehold on him that the story he would tell would comply only with the government's version of the 'truth' rather than the truth in accordance with the oath that Carpenter took."

■ The court has long recognized that an agreement to cooperate with the government in exchange for favorable treatment is " 'a proper exercise of [government] authority.' " *Hawthorne v. United States*, 504 A.2d 580, 587 (D.C.1986) (quoting *United States v. Librach*, 536 F.2d 1228, 1230 (8th Cir.), *cert. denied*, 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976)), *cert. denied*, 479 U.S. 992, 107 S.Ct. 593, 93 L.Ed.2d 594 (1986). Although testimony by an accomplice carries some risk of perjury, "that risk is acceptable as long as the witness' agreement is not

contingent upon the government's satisfaction with the content of the testimony." *Id.* (citations omitted). Furthermore, "[b]ecause even a proper plea agreement may signal a witness' willingness to curry favor with the government by coloring the truth for the benefit of the prosecution, due process requires full disclosure of the terms of the agreement to the jury as an aid to evaluating the witness' credibility." *Id.* (citations omitted).

*Felder v. United States*, 595 A.2d 974 (D.C. 1991), is controlling here. In *Felder*, the court rejected a similar claim where the plea agreement was couched in identical language, was based on giving "truthful testimony," and also provided that the government could unilaterally determine whether the witness' testimony was untruthful. *Id.* at 978–79 & n. 11. In that case the trial judge denied the motion to exclude the plea bargainer's testimony because the agreement was not contingent on the witness being required to achieve a conviction or satisfy the government in any other way. *Id.* at 979. This court agreed, noting that the plea agreement was not even contingent on the "value" of the witness' testimony. *Id.* Moreover, the court observed that

> the controlling cases do not hinge on or even discuss any requirement that an otherwise valid truthfulness provision in a plea agreement must turn on a court's determination of truth. The general requirement of truthful testimony on any basis "surely must encourage veracity" and "negates [the] inference of inducement to testify falsely."

*Id.* (quoting *United States v. Tarantino*, 269 U.S.App.D.C. 398, 433, 846 F.2d 1384, 1419, *cert. denied*, 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988)). In the instant case, as in *Felder*, the plea agreement required Carpenter to testify truthfully, and it was not contingent on the government's satisfaction with the "value" of his testimony.

Furthermore, the jury was in a position to evaluate Carpenter's credibility.[3] The terms

---

3. During oral argument, counsel for appellant argued that Carpenter's testimony should have been excluded because the provision in the plea agreement eliminating judicial review meant that

the jury was left to speculate about whether Carpenter thought he could enforce the plea agreement. The government responded that the plea agreement was judicially reviewed before

of the plea arrangement were disclosed to the jury during appellant's trial counsel's opening argument and during cross-examination of Carpenter, when counsel read pertinent provisions of the agreement while using an enlargement of the agreement as a demonstrative exhibit.[4] Carpenter admitted on cross-examination that it was his understanding that the plea agreement required that the government be "satisfied" with Carpenter's testimony if he was to avoid further charges in connection with the decedent's murder.[5] Appellant's trial counsel also impeached Carpenter with his six prior convictions, relating to drugs and guns. The trial judge instructed the jury to use caution in evaluating the testimony of witnesses who testified pursuant to a cooperation agreement with the government. The evidence before the jury also indicated that Carpenter's testimony was partially corroborated by that of Pree and Wheeler and by Carpenter's girl friend (Anita Morgan), who gave Carpenter an alibi. Pree's palmprint was also found on the stairway to the basement where the murder occurred.

Consequently, we conclude that appellant has failed to show that the trial judge erred in denying his motion to exclude Carpenter's testimony because, as a result of the terms of the plea agreement, Carpenter gave false testimony against appellant. *See Price v. United States,* 531 A.2d 984, 988 (D.C.1987); *Townsend v. United States,* 512 A.2d 994, 999 (D.C.1986) (*Townsend I* ) (citations omitted), *cert. denied,* 481 U.S. 1052, 107 S.Ct. 2188, 95 L.Ed.2d 843 (1987).

## II.

Appellant's contention that the trial judge abused his discretion in denying appellant's motion for a new trial, pursuant to Super.Ct.Crim.R. 33 and D.C.Code § 23–110, is meritless. *See Derrington v. United States,* 488 A.2d 1314, 1339 (D.C.1985) (citing *Strickland v. United States,* 389 A.2d 1325, 1327 (D.C.1978), *cert. denied,* 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 481 (1979)), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 201 (1988); *accord Gibson v. United States,* 566 A.2d 473, 477 (D.C.1989); *Townsend v. United States,* 549 A.2d 724, 726 (D.C.1988) (*Townsend II* ), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2457, 104 L.Ed.2d 1011 (1989).

■ First, the trial judge found that appellant's "newly discovered evidence," that Pree had perjured herself, was "inherently incredible and inadmissible," especially in light of the fact that appellant had not produced an affidavit from Pree. Because the judge ruled that the newly discovered evidence was inherently incredible, and this finding is supported by the record and not clearly erroneous, we need not resolve which test applies in determining whether the judge erred in denying appellant's motion for a new trial.[6] *Derrington, supra,* 488 A.2d at 1339 (citing *United States v. Kearney,* 220 U.S.App.D.C. 379, 385, 682 F.2d 214, 220 (1982)); *Godfrey v. United States,* 454 A.2d 293, 300–01 (D.C.1982).

The trial judge was the motions judge, and thus, having observed Pree's testimony at appellant's trial, the judge was in a good position to evaluate an attack on her testimo-

---

Carpenter was permitted to enter his plea. Appellant's counsel did not dispute this during his subsequent oral argument to the court.

4. The trial judge sustained the government's objection to trial counsel's question: "So essentially, if you testified in a way that doesn't satisfy the Government, you can be prosecuted for a first degree murder, burglary, robbery, UVV [sic] or perjury, false statement or obstruction of justice, right?"

5. Carpenter responded affirmatively to the question "is it your understanding in your mind that if the Government isn't satisfied with your testimony, that you can be prosecuted for all those

offenses that I just listed?" *See supra* note 4. Carpenter twice denied, however, that the only way he could get the murder charge dismissed against him was to testify at appellant's trial in a way that satisfies the government. Defense counsel did not explore what Carpenter had in mind.

6. Appellant relies on the *"Thompson–Heard"* test, *Thompson v. United States,* 88 U.S.App.D.C. 235, 236, 188 F.2d 652, 653 (1951); *Heard v. United States,* 245 A.2d 125, 126 (D.C.1968), but maintains that he has met his burden even under the *"Larrison"* test, *Larrison v. United States,* 24 F.2d 82, 87–88 (7th Cir.1928), urged by the government.

ny. The trial judge could properly find that appellant's theory that Pree falsely implicated herself and appellant in the robbery and murder, despite the fact that appellant's motion for a new trial was based on a claim that they were innocent, is unbelievable. The affidavits attached to appellant's motion offered, at best, limited support for appellant's claim of Pree's alleged recantation.[7] Pree's testimony was corroborated, at least in part, by other government evidence, including her palmprint. Further, as the trial judge found, the credibility of Pree's alleged recantation was undermined by the bias of the persons to whom Pree allegedly made the statements— appellant and his aunt—and by the absence of an affidavit from Pree indicating that she recanted her testimony against appellant at his trial. The trial judge found, and his finding is supported by the record, that appellant had failed to demonstrate that he was taken by surprise by Pree's testimony at his trial and was unable to meet it or did not know of its falsity until after trial; the judge stated that, as the government had observed, "nothing can be clearer from the record that the defendant's trial counsel knew exactly how Pree would testify." Appellant's trial counsel cross-examined Pree about her prior inconsistent statements. Finally, the trial judge concluded that any testimony by the affiants "would likely be inadmissible hearsay at a new trial." *Cf. Laumer v. United States,* 409 A.2d 190, 199–203 (D.C.1979) (en banc) (statements against penal interest).

■ Second, the trial judge found that appellant's trial counsel "represented him with exceptional diligence and with a sophisticated understanding of trial tactics and strategy that enabled them to obtain two acquittals in the face of compelling evidence that easily would have sustained convictions." *See Strickland v. Washington,* 466 U.S. 668, 688–89, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984); *Hill v. United States,* 489 A.2d 1078, 1080 (D.C.1985), *cert. denied,* 476 U.S.

1119, 106 S.Ct. 1980, 90 L.Ed.2d 663 (1986); *Curry v. United States,* 498 A.2d 534, 540 (D.C.1985) (citing *Carter v. United States,* 475 A.2d 1118, 1122 (D.C.1984), *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985)); *see also Ali v. United States,* 581 A.2d 368, 381 (D.C.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 259, 116 L.Ed.2d 213 (1991). As the trial judge found, trial counsel could reasonably conclude that it was in appellant's interest to avoid evidence that impugned appellant's character as a man who had beaten his common-law wife rather than show that appellant's physical abuse of Pree gave her reason to testify falsely against him. Appellant's trial counsel filed a motion *in limine* to exclude other crimes evidence that appellant physically abused Pree on the ground that such evidence "would make [appellant] look like a violent, drug involved person with a propensity for committing the charged offenses." The trial judge agreed, stating that

> it would have been nothing short of foolhardy for counsel to pursue the line of cross-examination at trial which counsel on appeal now asserts in hindsight should have been pursued. It is hard to conceive how opening the door to the government's exploration of the reasons for Ms. Pree's bias could have done anything other than dramatically increase the jury's hostility toward the defendant.

In addition, the trial judge found that by bringing out Pree's prior inconsistent statements in her effort to get out of prison, trial counsel had produced " 'powerful evidence of Pree's motives to accuse [appellant] falsely, motives far more potent than bias' without incurring the risk of engendering jury hostility."

■ Third, the trial judge could properly deny appellant's motion for a new trial without a hearing because "the record conclusively shows that he is not entitled to the relief he seeks because his claims are 'palpa-

---

7. In addition to his own affidavit, appellant produced an affidavit from his aunt to the effect that Pree stated that she and appellant let two men (allegedly Wheeler and Carpenter) into the decedent's home, and that she and appellant left the house without knowing what had happened to the decedent. Another affidavit, from an attor-

ney who had represented appellant in a civil matter, simply stated that Pree said she had committed perjury and does not indicate how Pree's testimony was perjurious or whether the testimony against appellant was false. Affidavits from two corrections officers expressed their beliefs, but cited no specific recantations by Pree.

bly incredible.' " [8]  *See Wright v. United States,* 608 A.2d 763, 766 (D.C.1992); *Godfrey, supra,* 454 A.2d at 300; D.C.Code § 23–110(c) (Repl.1989); *see also Tibbs v. United States,* 628 A.2d 638, 640 (D.C.1993) (quoting *Ramsey v. United States,* 569 A.2d 142, 147 (D.C.1990)); *United States v. Bradshaw,* 787 F.2d 1385, 1391–92 (10th Cir.1986).

Accordingly, we affirm the judgment of conviction. However, the parties agree, and the trial judge recognized, that in the event of affirmance the case must be remanded for vacatur. *See Felder, supra,* 595 A.2d at 980. We, therefore, remand the case to the trial court for that purpose.[9]

---

8. In his reply brief, appellant contends that trial counsel was ineffective for failure to obtain affidavits from Pree and appellant's trial counsel. *See supra* note 7. This claim was not presented in the motion for a new trial that appellant filed in the trial court, and therefore, the trial judge did not have an opportunity to address it. Appellant cannot raise it for the first time on appeal. *See Jones v. United States,* 512 A.2d 253, 259 n. 8 (D.C.1986); *Byrd v. United States,* 502 A.2d 451, 453 (D.C.1985).

9. *See Price, supra,* 531 A.2d at 989–90 n. 7; *Garris v. United States,* 491 A.2d 511, 514–15 (D.C.1985); *see also Whalen v. United States,* 445 U.S. 684, 693–95, 100 S.Ct. 1432, 1438–40, 63 L.Ed.2d 715 (1980).